Thank you, Your Honor. I'd like to try to reserve two minutes for rebuttal, if I could. The BIA's decision in this case has numerous errors. The BIA failed to apply clear error review, the requisite legal standard, the IJ's extensive and detailed factual findings that the nexus requirement is satisfied in this case. The BIA misread the AG decision in matter of AB 1 as dictating that asylum applicants who have been subject to domestic violence should virtually always lose their asylum claims. The BIA misunderstood the nexus inquiry in a number of other ways. And this court asked the parties to address in its order the implications of the recent AG decision in matter of AB 2 and also to address this court's decision in Diaz-Renoso. I'd like to start by explaining why I think that a remand that simply asked the BIA to think about matter of AB 2 doesn't really bear on the issues here, isn't sufficient to correct what went wrong in this case. And then along the way, I'll talk about the import of Diaz-Renoso as well. So as for matter of AB 2, the AG's recent decision, it said it was reaffirming the BIA's existing standard for nexus, which was set forth in a 2017 BIA decision called matter of LEA. Matter of AB 2 talked about the need for a showing of causation, and it also disapproved some Fourth Circuit decisions about whether the nexus standard is satisfied if a protected ground is incidental or tangential. But remanding just to apply matter of AB 2 won't deal with the problems in the BIA decision before this court. Now, the BIA here made errors that matter of AB 2 just doesn't correct for, and I think there are four of those. And if I could, I'd like to talk about each of them. The first one is, as I alluded to in my introduction, that the board didn't conduct clear error review of the IJ's factual findings of nexus here. Nexus is a quintessential factual issue. And for the BIA to do clear error review, as this court said in its recent decision in Guerra, we cite in our reply brief, the board would have to engage with the factual findings, and the record would have to explain affirmatively why the factual findings are, in the board's view, illogical, implausible, or without support in inferences drawn from the record. Simply mouthing the clear error standard in the BIA's decision isn't sufficient. And here, the BIA has basically no analysis at all. And even an assertion that factual findings that exist in the BIA's, excuse me, in the IJ's decision are nonexistent. That is not proper clear error review. That is the BIA interposing its own view of the facts, which it's not permitted to do under its regulations. It has to serve as an appellate body. And that is something that matter of AB2 doesn't speak to, but it's a long- Can I ask you a question on that point? Which is this, why, you know, the BIA's decision, there aren't sufficient factual findings on these points. Could they be saying that she just didn't prove this particular element of her case? I think one way to understand what the BIA is saying, and it's a little unclear, but one way to understand what the BIA is saying is that the BIA understood the IJ to have applied an incorrect legal standard for nexus. In fact, the IJ applied the exact legal standard for nexus that's set forth in matter of AB2 and set forth in this court's decisions. But yes, I think part of what's infecting that statement in these few sentences of analysis that the BIA gives here is the BIA's own legal misunderstanding of nexus. And there are a couple of different elements to that. One is that the board here is clearly reading matter of AB1 and the language in matter of AB1 that talks about how people in domestic violence situations should generally fail in their asylum claims as a direction, essentially a legal direction, to reject claims of people who are applicants for asylum who have experienced domestic violence. If I may, if that is sufficient for Judge Pios' response, I'd like to actually ask a question that isn't in the focus order. One of the alternative findings and conclusions of the immigration judge was that the petitioner had proved a nexus to political opinion. And I wonder, in your view, if we were to conclude, and this is a hypothetical, if we were to conclude that substantial evidence does not support the BIA's rejection, in other words, that every reasonable person would have to find a nexus to political opinion, would we even have to reach the questions involved in AB and the other issues pertaining to domestic violence? I think that that would obviate to some degree the need for the court to talk about a particular social group composed of Mexican women, right, which is one basis for making a claim here. But I think also that it is also true that people who are subject to domestic violence may apply for asylum, raising a claim that one central reason for their persecution was a feminist political opinion. And so to the extent that matter of AB1 says that people making domestic violence-related asylum claims are generally going to fail, I think that could encompass... My question really is, not every victim of domestic violence  and not every political opinion deals with feminism. It seems to me that it's happenstance that the two are related in this case. But it sounds like your answer is we would not have to deal... If we were to go that route, we would not have to deal with the question of social group analysis and some of the other more convoluted areas of domestic violence in this arena. Yes, Your Honor, I think that's right. I do think, again, there's going to be a subset of people who have experienced domestic violence who will be making this kind of political opinion claim. But I agree with you that it will be a subset only, and it's not going to be every applicant who's asserting that they are entitled to asylum and that they've experienced persecution in the form of domestic violence. And so, yes, this case is unusual. It has, I think, unusually strong facts in the record. It has unusually strong findings by the IJ here. But, of course, that's not required for every asylum case. And so we want to make sure that the errors in the BIA decision here aren't repeated and aren't repeated on remand but aren't repeated in general. And so I think that it is important, even if the court thinks that the feminist political opinion standing alone is a basis to throw out what the BIA did here. So to make a statement, as the court did in Diaz-Renoso, that matter of AB1 and those statements, those remarks, as the court referred to them in Diaz-Renoso in matter of AB1 about domestic violence victims shouldn't be regarded as having changed the legal standard for Nexus in any way. They're simply stray remarks, and they shouldn't be taken as direction by the BIA of what to do in a case, whether it involves feminist political opinion or not, but a case where somebody is an asylum applicant who's experienced domestic violence. And I think- If we were to focus on the political opinion as a foundation, would it have to be remanded then to the BIA? And this alternative ground would be what left up in the air at that point? What would be the procedural posture? I think the court could remand to the BIA in that circumstance, and the court could point out that there's no basis in the BIA's opinion for finding that there's anything clearly erroneous about what the IJ said about feminist political opinion. But again, I still think it would be necessary in that posture for the court to address the BIA's apparent misimpression of the law that says that anybody, including Ms. Rodriguez, any asylum applicant who is subject to domestic violence, regardless of the protected ground that they're asserting, should necessarily fail because the reasons for their persecution are, in the BIA's view, essentially personal. We think that's wrong. And there are a couple other errors that the BIA made here. One is saying that the reasons, the protected ground, had to be unrelated to a personal relationship. We think that's incorrect for the reasons we gave in our brief. We think it's wrong that the board seemed to think that an asylum applicant needs to show that their persecutors targeted similarly-situated people in order to show nexus. So all that we think is incorrect, and it's important for this court, in remanding, to explain that to the BIA so that the BIA doesn't just repeat these errors again because nothing about matter of AB2 is going to disabuse the BIA of these notions. So I could reserve the remainder of my time for rebuttal. Thank you. You may do that. We'll hear from Mr. Stanton. Good morning, Your Honors. My name is Bo Stanton, and I'm here today on behalf of the United States Attorney General. At this time, the government moves to renew its motion to remand this case to the Board of Immigration Appeals to reconsider Petitioner's case in light of the acting Attorney General's recent decision in matter of AB2. The basis for this remand is in that very decision, the Attorney General used language like he wanted to issue this decision to clarify, to provide additional guidance on the nexus requirement among two other issues. He acknowledged that there was a lack of clarity among the circuit courts, among decisions regarding the nexus requirements. So he set forth in clear language. Yes. There are remands and there are remands. There's just the bare remand that you're seeking, but there's also the opportunity if we find errors that are unrelated to AB in particular in what the BIA did here to remand in a more nuanced or more complete way. And I would appreciate your response to the question that I asked your opposing counsel concerning political opinion, which as I read both versions of AB really are not, it really is not encompassed in that decision, at least not directly. What is your position with respect to whether substantial evidence supports what the BIA did with respect to political opinion in this case? We believe that this case, the Board of Immigration Appeals decided both the particular social group nexus and the political opinion nexus based on matter of AB. Indeed, if you go to the board's decision, the record page 13 in rejecting a political opinion, it cites specifically to matter of AB. So we would argue that any errors that the board may have committed in making this decision is based on matter of AB number one, which no longer as it stands is the same as matter of AB2, which sets forth in clear language, a two-part framework for considering the nexus requirements. The board nor the immigration judge in this case had the benefits of this clear language. Indeed, you go look at the immigration judge's decision contrary to what opposing counsel has said. She did not apply this two-part test. Indeed, she does not cite matter of LE1 or 2 or cite any other language. Counsel, this is Judge Pius. Would you just summarize for me your view of how AB2 changed the standard for nexus in AB1? It's not so much that it changed the nexus requirement, but you just suggested that there was some revision or something. So I'd like to really understand the government's view on how AB2 altered or revised or changed AB1. To answer your question, matter of AB2, what it did in Attorney General's own language was to provide clarification to address the proper approach to recurring issues facing applicants for asylum regarding nexus. And so what this decision did is lay out clearly the test that has to be applied when determining nexus. This, for us, is why it has to be remanded, because this standard was not applied by the board or by the immigration judge. And it's not because it wasn't articulated. What is the standard? You keep talking. You just said they laid out a test. They didn't apply it here. I want to know what the test is. What are the elements that the BIA should have, or the IJ or BIA should have followed under AB2 that they didn't when they were considering AB1? So that exact test, Your Honor, is first determining whether or not a particular ground is implicated in a case. First, you look at whether or not the harm was a must, was a but-for cause of the Wrongdoers Act. So you look at that first. And then if there is something that was a but-for cause, then you determine whether or not it played more than a minor role. Can't be incidental. It can't be tangential. It has to be more than that. And so in this case, those two steps were not taken. I want to go back to your assertion that the immigration judge's discussion of political opinion was also grounded on AB. It may be that the BIA's was, but at pages 11 and 12 of the immigration judge's decision where this is discussed, there's no citation to AB in the discussion of political opinion. It's a straight-up discussion of demonstrating that the persecutors believed she held a political opinion and that she was persecuted because of her actual or imputed political opinion. It doesn't refer in any way to AB. So I'm not sure I understand, other than just telling the BIA that it was wrong about that whole area of nexus. I don't understand why we shouldn't do that independently of just an open-ended remand under AB. I apologize, Your Honor, if I gave you the impression that I was indicating the immigration judge based her decision on matter of AB. I was trying to clarify and say it was the Board of Immigration Appeals who based both the political opinion and particular social group nexus requirement on matter of AB. And when I mentioned the page number- That was wrong then under the first AB as well as the second. So I don't understand why we have, why your struggle for a remand without any comment on the BIA's errors is appropriate. Your Honor, if you go back and look at the decision, the Board of Immigration Appeals relied on matter of AB. And it did so based on the opinion of whether or not personal disputes could ever be a reason for granting asylum. And that nexus requirement, whether it is in the context of a particular social group, whether it's in the context of a political opinion, this two-part test applies. And so although a matter of AB2, this two-part test was clearly articulated and only applied within the context of domestic violence. That test applies to any case where the question of nexus comes up. So the fact that the board- Well, why don't you want to just, excuse me, counsel, but I don't understand exactly why you don't want this court to state the correct understanding of AB rather than sidestepping the matter. I'm not sure if I quite understand your question, Your Honor. I don't think we're asking you to side- Counselor, you're asking us to remand without issuing any sort of, it sounds like, without issuing any sort of guidance or opinion or reasoning. You just want it to go away. And I just don't understand why that's appropriate. It's not that we want this case to go away. That's not the issue here at all. What we want to have happen in this case is we want the Board of Immigration Appeals in the first instance to decide whether the nexus requirement has been met in this case under the intervening case law that was just issued this month that articulated clearly the two-part test. So in issuing this remand, we're, of course, asking you to send it back for the board to consider it, but the board, excuse me, the court could offer any sort of additional guidance it wants to provide the board in analyzing this case. We're not saying you can't do that, but we're asking you to allow the board the first opportunity to address this issue. It wasn't addressed by the board. It wasn't addressed by the immigration judge. Again, it wasn't clearly articulated until this month by the acting attorney general. So we're asking you to go back for that. Mr. Stanton, I'm back with you, too, and I'm seeing the two-part test, but I'm asking, really, what's the difference with the first AB, where that appeared to be the test already in immigration law? In the matter of AB, as far as I read matter of AB, I do not see any on-point discussion about the nexus requirement. Rather, matter of AB dealt with whether or not domestic violence survivors can constitute a particular social group, and they were talking about the parameters of that. And so that's a separate and distinct issue that's not an issue in this case. And so the nexus discussion in matter of AB, too, is new, and it does go into a great bit of detail. And the attorney general, again, issued this decision with his — he himself saying to provide clarity, to provide the proper approach for addressing the nexus requirement. He acknowledged that there was uncertainty across the country regarding this nexus test, and now there isn't. And the fact that we now have this clear case law, the agency should be given the opportunity to address this in the first instance under the ordinary remand rule. Thank you, counsel. And Ms. Goldenberg — Right now — I'm sorry? Great. Thank you so much, Your Honors. I was going to say thank you so much, Your Honors. Ms. Goldenberg, you have reserved a bit of time for rebuttal, I believe. Let's wait until the clock shows it. There we go. Ms. Goldenberg, when the attorney general talks about the ordinary remand rule and that this is a clarification, why wouldn't we ordinarily remand for this to be resolved under the clarification? Because your argument is that there was a misunderstanding before or a misapprehension about the criteria, and now that attorney general is saying, well, we have now very clear criteria, and ordinarily we would remand and say, okay, use the clear criteria. Before you answer, I'll ask the clerk to start the clock running. Yes, Your Honor. So I think it's fine if the court is going to remand to say that the board should look at matter of AB2. But matter of AB2 just reiterates the old standard, and it doesn't speak to the specific errors that the BIA made in this case. And so I think that there's a chance that if the court doesn't say something about those errors, that the board would just repeat them. And I'd like to strongly disagree with the government's assertion that the IJ here applied a different standard than is set forth in matter of AB2. The IJ, in fact, applied the exact standard. The IJ looked for but-for causation. The IJ said that the protected ground had to be primary or central, which is an interpretation of the central language in the statute. And so I don't think that the board on remand could fault the IJ for somehow not anticipating something that happened in matter of AB2. Matter of AB2, I think, has some issues. I don't think the court should endorse it in this case. This case doesn't present some of the problems with matter of AB2. But I think that the court, as I say, if it remands, could say, look, these errors that the BIA made before are errors, and the BIA can't repeat them. The BIA has to engage in clear error review. It can't put a thumb on the scale against domestic violence victims. It can't say that a protected ground has to be unrelated to any kind of personal relationship. That's all wrong. The court also, I think, could, and I'm sorry, Your Honor, if I could just finish my sentence. I appreciate this. The court could, consistent with some of the discussion about feminist political opinion, could also reverse outright on feminist political opinion, and we would welcome that. But if the court's going to remand, I think it's very important that these errors be addressed and that the board not simply be thrown back on matter of AB2, which doesn't meaningfully change the standard and doesn't correct anything that the board got wrong before. Thank you, counsel. The case just argued is submitted. We appreciate helpful arguments from both of you in this challenging case. And with that, we will be adjourned for this morning's session.
judges: McKeown, Graber, Paez